**METZ et, Appellants, v. BETZNER et al., Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6489.   Decided February 4, 1946.

Bert H. Long, Cincinnati, Milton M. Bloom, Cincinnati, Ratterman, Cowell & Fletcher, Cincinnati, for appellants.

Robert Adair Black, Cincinnati, for Clarence W. Betzner.

Oliver G. Bailey, Cincinnati, and William M. Fridman,

Cincinnati for Daisy M. Betzner, Daisy Idella Betzner Sweeney and Clifford H. Sweeney.

## OPINION

By HILDEBRANT, P. J.

Trial de novo, the prayer of the amended petition being for the specific performance of a contract entered into on April 1, 1943, for the sale of real estate by Daisy M. Betzner, vendor, to plaintiff as vendee. Vendor's title was derived from the will of her deceased husband Walter T. Betzner, who died February 3, 1942, and the deed of her daughter, defendant Daisy Idella Sweeney and her husband. Item 5 of the will reads as follows:

"Item 5. I give, bequeath and devise the rest residue and remainder of my estate to my beloved wife Daisy M. Betzner and my beloved daughter Daisy Idella Betzner, all the rest, residue and remainder of my estate be the same, real, personal and mixed and wheresoever situated which I now have or may be hereafter entitled, the same to be in fee simple, save and except should my beloved wife, Daisy M. Betzner, again marry, then and in that event she should forfeit her interest in all the real estate then owned and the whole of said real estate to become the property of and vest in fee simple in my beloved daughter, Daisy Idella Betzner."

Title to the real estate is at present in defendant Dr. Clarence W. Betzner, by virtue of a deed from vendor, through her daughter and husband, as the result of a settlement agreement between them and dismissal of a declaratory judgment suit pending in the Probate Court prior to date of this contract, wherein defendant, Dr. Clarence W. Betzner was plaintiff and Daisy M. Betzner and Daisy Idella Sweeney, individually and as executrices of the estate of Walter T. Betzner, deceased, were defendants. The gist of the action was that certain intangibles inventoried in the estate of Walter T. Betzner were acquired with the funds of plaintiff while Walter T. Betzner was acting as confidential business and fi-

nancial agent of his brother, handling all of his funds in joint accounts at different banks and financial institutions and converted to his own use, with a subsequent failure to account therefor. In the body of the petition the following appears:

"plaintiff visited his said brother at Deaconess Hospital, Cincinnati, Ohio, and in the presence of his wife, Daisy M. Betzner, one of the defendants herein, acknowledged and admitted his failure to properly account for the funds and securities entrusted to his care and further, that the real estate, situate and located on Adams Road, Hamilton County, Ohio, and listed and described in the inventory filed in the estate of the said Walter T. Betzner, deceased, in truth and in fact belonged to the plaintiff herein."

The prayer of the petition was:

"Wherefore plaintiff prays for a declaratory judgment determining that said defendants, have no right, title and/or interest in the stocks and bonds hereinbefore fully described and set forth; that the said stocks and bonds, listed, appearing and described in the inventory of the estate of Walter T. Betzner, deceased, is the property of the plaintiff herein, and for all such other and further relief to which plaintiff may be entitled to in the premises."

Defendant, Daisy M. Betzner denies the above allegation with reference to the real estate, and further denies that a settlement between Dr. Clarence W. Betzner and Walter T. Betzner in 1939 was only partial, as claimed by Dr. Clarence W. Betzner.

In 1932, Walter T. Betzner who in the handling of his brother's finances for many years acted virtually as an alter ego, acquired two parcels of land on Adams Road, Mt. Healthy, taking title to one in his own name and the other in the name of Dr. Clarence W. Betzner, and attended to constructing two dwellings and other buildings and appurtenances thereon, including a common driveway, entering over the land of Dr. Clarence W. Betzner, and curving over on the land of Walter T. Betzner and back to a point of separation toward the rear of the property of each.

On May 24, 1943, plaintiffs made proper tender and demand for deed on Daisy M. Betzner, who failed to comply therewith.

On June 25, 1943, the defendants having reached a settlement agreement, carried it into effect by the dismissal of

the declaratory judgment suit and a partition suit directed at the so-called Vine Street property and payment of $11,000.00 by Dr. Clarence M. Betzner to Daisy M. Betzner, who deeded the real estate here in question to Dr. Clarence M. Betzner through Daisy Idella Sweeney and husband, thence to Dr. Clarence W. Betzner.

The entry of dismissal of the declaratory judgment suit is as follows:

."All controversial matters herein having been amicably arranged, adjusted and fully settled between the parties hereto and especially but not exclusively the parties hereto having amicably partitioned among themselves the real estate (inventoried in the estate of Walter T. Betzner, deceased) consisting of 5.07 acres of land situate on Adams Road, Mt. Healthy, Hamilton County, Ohio, and being known, described and numbered 2109 on said Adams Road as disclosed by the records in the Recorder's office of Hamilton County, Ohio.

"This action is dismissed at the costs of the defendants. "Record waived."

Clarence W. Betzner claims to have had senior and superior equities in the real estate, by virtue of the breaches of trust of Walter T. Betzner prior to the contract and that the doctrine of lis pendens applied in the declaratory judgment suit, which merged into the consent judgment of June 25, 1943, which amounted to an amicable partition of the real estate and became res adjudicata as to his equitable estate therein, and, further, that the contract sued upon is incapable of specific performance because Daisy M. Betzner took only a life estate in the undivided one-half interest under the will and her daughter was not a party to the contract.

The Court has no difficulty in finding that Daisy M. Betzner took a fee simple title under the will of Walter T. Betzner to one-half the real estate, and on obtaining the deed of her daughter and husband for her one-half interest, held the full fee simple title on April 1, 1943, the date of the contract of sale.

The Court further finds that the entry of dismissal involved no action of the court and left the parties standing as though no action had ever been commenced. State, ex rel. Cash, v Rose, 136 Oh St 143; State, ex rel. Strong v Cook, 124 Oh St 478; Brown v Brown, 70 Oh Ap 41; Siegfried v R. R. Co., 50 Oh St 294; Welsh v Pennsylvania Co., 53 Oh St 670; Goldstein v Klwavis, Inc., 34 O L R 576. See, also: 14 O Jur par. 2

p. 315, and par. 12, p. 327. The argument that an amicable partition is effected by the entry amounting to a judgment by the court must fail because the real estate here involved was not held by tenants in common, and the requirements of section 12033 GC, relating to amicable partition could not be met, hence the term of amicable partition cannot be accurately applied to describe the agreement of settlement.

Discussion of lis pendens and doctrines of notice are unnecessary, since it appears that all parties became aware of the existence of the conflicting claims of the others prior to the dismissal of the declaratory judgment suit, so that whatever was done took place with actual knowledge. It therefore appears that Dr. Clarence M. Betzner took title to the real estate with full knowledge of the existence of the contract of sale. In the settlement agreement, Dr. Clarence W. Betzner gave up his claim to some $6000 of intangibles and paid $11,000 in money in return for real estate valued at approximately $19,250.00, which substantially negatives has equitable claims set forth in the declaratory judgment suit which was dismissed.

The contract of sale contained the following clause, towit: "This transaction provides for a reciprocal easement to be furnished the buyer."

It is contended that this clause renders the contract so indefinite as to preclude specific performance thereof.

While the right of a vendee to specific performance, with abatement for partial disability to convey, is established—see, 49 Am. Jur., Par. 105, at page 123; **Speigler v Sonnenberg, 88 Oh St 192, at 205; Steel v Murphy, 10 Oh Ap 150**—the Court finds it unnecessary to resort to that right in arriving at a decree here.

Evidence in the record clearly identifies the reciprocal easement as relating to the driveway and its use. The following statement contained in 37 O Jur p. 33, would appear to be pertinent on identification of the easement:

"The question of the degree of certainty of contracts often arises in descriptions of land under contracts of conveyance. It is a well settled rule in Ohio that a memorandum in writing which identifies the property is sufficent upon which to base a suit for specific performance of a contract, and it is equally well settled that if the memorandum pointed to the identity of the land, oral evidence may be introduced to enlarge upon the description in order that it may be exact by metes and bounds or otherwise. No hard and fast rule requiring specific performance to be in the very letter of the

contract prevails in this state, and the court in its decree may insert a pertinent description of the land which the contract clearly entitles the plaintiff to have."

Acting not only with the acquiescence and consent of Dr. Clarence W. Betzner, but commissioned as his confidential agent, Walter T. Betzner acquired adjoining parcels of real estate on Adams Road, Mt. Healthy, and attended to the construction of the buildings, driveway, and all appurtenances thereon, providing entry to both parcels solely over the land of Dr. Clarence W. Betzner, curving solely onto and over the land of Walter T. Betzner, and proceeding partly on the land of both to a point of separation to the rear of each property. This construction was followed by a user from the date of acquisition and construction, dating back to 1932. From such a set of facts, a reciprocal easement arises. **Shields v Titus, 46 Oh St 528,** the first and second paragraphs of the syllabus are:

"1. A way laid out by an owner over his lands for the benefit of parcels thereof into which he subdivided them for sale, the boundaries of which way, the purchasers of the several parcels definitely establish by mutual agreement, and thereafter improve and use it for the benefit of their lands, is an easement annexed to the lands, and passes by a grant of the land without being mentioned in the conveyance. The grantee takes the rights his grantor had with respect to it, and holds his land subject to the burden it imposed.

"2. Where the proprietors of adjacent lands, by mutual agreement, definitely establish the boundaries of a private way previously laid out along their lines, and appropriate the strip of land embraced therein to be used as a perpetual easement for the benefit of the abutting lands of each, and the common benefit of all, and, in pursuance of the agreement, fence to the boundaries so agreed upon, and thereafter improve and use the way thus established, the agreement may be enforced in equity, at the suit of a purchaser from one of such proprietors, against a purchaser with notice from another. Injunction preventing the permanent obstruction of, or interference with such way, is a proper mode of enforcing the agreement."

At page 539, the Court states:

"There can be but little doubt that the way, as originally established by the owner of the entire tract for the benefit

of the parcels conveyed by him to purchasers; became an easement appurtenant to the lands granted, and not merely personal to the grantees. It was established for the beneficial use and enjoyment of the premises conveyed, and, was a burden imposed upon each parcel for the more complete and convenient use of the others. Each parcel, for the purposes of the way over it, became servient to the others, and they, in turn, were subject to a like servitude for its benefit.

"The exact location and width of the way, so made appurtenant to their lands, were definitely settled by the mutual agreement of the owners, who placed their fences to the lines agreed upon, and thereafter improved and used it without objection. Such was the condition of the way when the plaintiff and defendant purchased their lands, and such it continued to be, down to the time of its threatened interruption by the defendant. It was then, not simply a way of necessity, limited in duration by the necessity which originally gave rise to it, but became permanently appurtenant to the principal estates; and, under the well settled rule, each purchaser took his land with all the rights his grantor had with respect to it, and burdened with the servitudes he imposed upon it. As was said by Mr. Justice Story in Hazzard v Robinson, 3 Mason, 279, 'Whatever is actually enjoyed with the thing granted, as a beneficial privilege at the time of the grant, passes as parcel of it.' A way is appendant or appurtenant to other lands, when it is granted for the convenience of their occupation without respect to the ownership or number of occupants. In such case, the right-of-way passes with the dominant estate as an incident thereto."

And, at page 540, it is said:
"And it is the established rule in this state, that the appurtenances to property pass with it, upon its alienation, without the use of the term privilege or appurtenance in the conveyance. **Morgan v Mason, 20 Ohio 401.** In the case cited above it was held that a right-of-way, or other easement appurtenant to land, passed by a grant of the land, without any mention being made of the easement in the conveyance, and though neither the term appurtenance, or its equivalent be employed."

Again, at page 541, affirming the theory of agreement as the basis for such an easement, it is stated:

"The definite establishment of the boundaries of the way, and the appropriation by each proprietor, of his lands em-

braced within them, for the mutual benefit of the lands of all, constituted a sufficient consideration to support the agreement. Each owner, secured a right or interest in the nature of a servitude in the lands of the others included in the way, and the benefit accruing to his estate for the use of the same."

In **15 O Jur par. 51, page 75,** it is stated:

"It has been said that an owner of land who, without objection, permits another to expend money in reliance upon a supposed easement, when in justice and equity the former ought to have disclosed his conflicting rights, is estopped to deny the easement."

In note 5 thereunder, the following appears:

"Thus, oral permission to use an old roadway partly upon the land of another, upon the faith of which permission a house is built upon an adjoining lot in such a manner as to render it accessible only by means of such roadway, has been held to operate as a grant of a private easement of way appurtenant to the adjoining lot. Kintz v Zwisler, 7 O. N. P. 15, 9 O. D. N. P. 145."

In 17 Am. Jur., p. 982, it is stated:

"An easement by estoppel has been held to exist in a passageway over a boundary strip as a result of the reciprocal use of the strip by the adjoining owners as a passageway for a long period of time."

In 98 A. L. R. p. 1098, the annotation states:

"The cases coming directly within the scope of the annotation are those which discuss the right arising from the reciprocal use by adjoining owners, pursuant to an oral or implied agreement therefor, of a strip along their boundary line and comprising land on both sides of such line, for the purpose of a passageway or some other purpose for the benefit of both lots."

Pointing out that the facts here are stronger in support of the creation of a reciprocal easement than in any of the cases cited, we conclude that a reciprocal easement appur-

tenant to the real estate in question exists and passes with any deed thereto, without the necessity of specific mention being made thereof. It is clear that the same is true of the adjoining parcel belonging to Dr. Clarence W. Betzner and as vital to the use and enjoyment of the driveway as means of ingress and egress to one adjoining parcel as the other.

Considering all the circumstances of the case and exercising its discretion under equitable rules and the power to completely dispose of all the issues of the case, this Court finds that Dr. Clarence W. Betzner holds title to the real estate subject to the contract of sale between vendor and vendees, and it is ordered that Dr. Clarence W. Betzner execute and deliver a good and sufficient deed with the reciprocal driveway easement appurtenant thereto, on payment or deposit with the Clerk of this Court by the vendees of the full balance of the purchase price, and on failure so to do in lieu thereof, the decree herein to operate as the conveyance.

HILDEBRANT, P. J., MATTHEWS and ROSS, J. J., concur in syllabus, opinion & judgment.